IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| ST. JOHN'S CONSTRUCTION CO. | * |
| Plaintiff, | * |
| v. | * Civil Case No.: WDQ-2-CV2338 |
| ZURICH AMERICAN INSURANCE COMPANY, | * |
| ASSURANCE COMPANY OF AMERICA, and | |
| ZURICH INSURANCE SERVICES, INC. | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff failed to pay the necessary premiums to maintain coverage as of the time of the fire in question. Having fully understood its premium payment obligations prior to the fire, Plaintiff cannot now avoid the consequences through attempts to create confusion regarding its premium payment obligations. Summary judgment in the Defendants' favor is therefore appropriate.

**II.    STATEMENT OF FACTS**

1.    On October 6, 1999, Plaintiff, St. John's Construction Company ("St. John's Construction") purchased a new builder's risk insurance policy from Assurance Company[1] through the MidAtlantic Insurance Agency for 32 new townhouses Plaintiff planned to build at

---

[1] The only insurance contract at issue was between Plaintiff and Assurance Company; no contract existed between Plaintiff and the other Defendants. ZIS is a separate company charged with underwriting and issuance of Assurance Company policies, as well as premium billing for those policies. Zurich American had no relevant involvement with this matter.

4801-4843 Poe Avenue, Baltimore, Maryland. Exhibit A, Inland Marine Declarations, Policy No. BR 96267092. Under "5. Limits Of Insurance," the Declarations required selection of either the One-Shot or Reporting Form option, with separate boxes to be checked for each, and under Reporting Form, either the "Annual Rate" or "Monthly Rate (HBIS-4)" box had to be checked to establish how the insurance premium would be computed and paid. Id. St. John's Construction obtained the Monthly Rate Reporting Form coverage in the present case, as reflected by the Declarations.

2.   The HBIS-4[2] monthly rate endorsement changed the Builder's Risk Coverage Form with respect to the monthly reporting and premium payment requirements:

> **SECTION E., ADDITIONAL CONDITIONS 4. REPORTING PROVISIONS** is deleted and replaced by the following:
>
> a.   By the last day of each month you will report to us the total estimated completed value of all covered property for all locations in your inventory during the previous month. Inventory includes covered property you started as well as previously reported covered property. The covered property must be reported each month for coverage to continue...
>
> b.   If, at the time of loss you have not reported a covered property as required in this provision, we do not cover that covered property for that loss.
>
> c.   You must pay premiums based on the total estimated completed value of the covered property using the rate we furnish. Premium payment must accompany the report in order for the reported locations to be covered.

Exhibit B, Form HBIS-4, Rev. 10-96; Exhibit C, Form 40471, Rev. 10-96.

---

[2] Defendants contend that the January 2000 policy forms were in effect at the time of the fire, but as Plaintiff disputes this, Defendants rely upon the October 1996 addition of the forms originally issued with the policy in 1999 for purposes of this motion.

3.  The Builder's Risk Plan Monthly Rate Reporting Form used introductory language consistent with the terms of the monthly rate endorsement, as reflected by the form for the month ending November, 1999:

> Any structures started but not reported within the time *stated in the policy* are not covered. All structures and inventory for the month ending November, 1999 must be reported and payment received in the lockbox by December 31, 1999 in order for coverage to be in effect. When completed and received with payment, this form becomes a part of your policy.

Exhibit D, Monthly Rate Reporting Form (Skalski Deposition Exhibit 8) (emphasis added).

4.  Beverly Skalski was the individual at St. John's Construction charged with making insurance premium payments. Exhibit E, Skalski Deposition at 10-11, 47-48. As a result, Ms. Skalski had become familiar with the one-shot and annual rate reporting form coverages offered by Assurance Company. Id., at 25, 29-31. Ms. Skalski also understood the reporting and premium payment obligations under the Monthly Rate Reporting Form, as well as the advantages of obtaining the monthly rate rather than the annual rate coverage:

> Q. What was your understanding as to how you had to make premium payments for this policy?
>
> A. We would get the monthly reporting forms, then we had to pay monthly for the houses that were enrolled.
>
> Q. And how, if at all, did the monthly reporting differ from the other policies we talked about, annual rate reporting policy?
>
> A. The Boston Courts, you send in monthly without additional premiums, just the form, and the St. John's, for the Poe Avenue you had to pay monthly with the form.
>
> Q. And do you understand that distinction before the fire?
>
> A. Yes.

3

\*         \*         \*

> Q. Do you have any knowledge as to what advantages or disadvantages there are for using the monthly rate reporting method, as opposed to other methods?
>
> A. I think that, if you are going to build a house quickly, to pay the monthly is supposed to save you money.
>
> Q. What's the basis for your understanding?
>
> A. You pay once a year, you're going to pay one price; but if you finish the house in three months you still pay the yearly price; whereas with this, you can save money, if you finish the house quickly.

Exhibit E at 44-46. However, Ms. Skalski's understanding regarding premium payment and reporting obligations was not based upon the language of the various insurance policies; neither she nor anyone else at St. John's Construction ever actually read insurance policy forms. Id. at 19, 38-39, 47, 78.

5.      ZIS sent St. John's Construction the monthly reporting form each month, and based upon her understanding as to the reporting and premium payment requirements, Ms. Skalski prepared and submitted the reporting forms and premium payments for the months ending November 1999 through March 2000 prior to the fire. Exhibit D, Exhibit F, Monthly Rate Reporting Forms for months ending December 1999 through March 2000; Exhibit E at 47-48, 66.

6.      On October 22, 2000, fire damaged two of the townhouses under construction at Poe Avenue. However, at the time of the fire St. John's Construction had failed to submit reports or premium payments for April through August of 2000. In fact, the reports and premium payments for April through July of 2000 were not submitted until December 22, 2000,

two months after the fire. Exhibit G, Monthly Rate Reporting Forms for months ending April – August 2000. Ms. Skalski had no explanation as to why she had failed to submit the necessary reports and premium payments prior to the fire. Exhibit E at 61-62, 75.

7.     Based upon Plaintiff's failure to submit the necessary monthly reports and premium payments, Assurance Company denied Plaintiff's claim for the fire damage. Plaintiff subsequently initiated the present litigation asserting claims against Defendants for breach of contract, declaratory relief, bad faith and negligent misrepresentation.

### III. ARGUMENT

**A. Standard of Review**

A motion for summary judgment must be granted if there is no genuine issue of material fact, and the moving party demonstrates entitlement to judgment as a matter of law. F.R.Civ.P. 56(c). If a plaintiff is unable to present evidence regarding the elements of its prima facie case, summary judgment is appropriate:

> The plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a case there can be no "genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). While a non-moving party is entitled to have all reasonable inferences drawn in its favor, where a defendant establishes the absence of

sufficient evidence to support a claim, a plaintiff must demonstrate there is a genuine issue of material fact to avoid summary judgment against it. Id., at 324-25.

**B.    St. John's Construction cannot successfully assert its claims for breach of contract and declaratory relief because of its failure to pay its insurance premiums.**

Simply put, although Plaintiff failed to pay the necessary insurance premiums prior to the fire, Plaintiff nevertheless seeks the benefits of the insurance coverage it did not pay for in the present case. As Chief Judge Haymond once noted in a dissenting opinion, "one usually gets in this life only what he pays for. Insurance coverage is no exception." C & H Plumbing & Heating, Inc. v. Employers Mutual Casualty Co., 264 Md. 510, 517, 287 A.2d. 238 (1972), *quoting* Old Colony Ins. Co. v. Moskios, 209 Md. 162, 177, 120 A.2d. 678 (1956). No exceptions should be made for the Plaintiff in the present case; based upon Plaintiff's failure to pay its premiums, summary judgment is appropriate in the Defendants' favor.

The United States District Court for the Western District of Texas squarely addressed a strikingly similar case, applying the Monthly Rate Endorsement in question, in Tapatio Springs Builders, Inc. v. Maryland Casualty Ins. Co., 82 F. Supp.2d. 633 (W.D. Tex. 1999). In Tapatio, the insured had failed to report or pay the necessary premium for a particular property that had been in its inventory for several months until after the fire. Nevertheless, the insured contended that it should recover based upon the alleged ambiguity of the Monthly Rate Endorsement. The Texas court rejected these arguments, concluding that the policy was unambiguous, and ultimately granting summary judgment in favor of Maryland Casualty and Assurance Company of America. The court noted that the Monthly Rate Endorsement is a continuous reporting policy, i.e., "…the policy will not expire so long as reports are made showing the need for

6

coverage." 82 F. Supp.2d at 642. Specifically, the Monthly Rate Endorsement provides, in relevant part:

> **SECTION E., ADDITIONAL CONDITIONS, 4. REPORTING PROVISIONS** is deleted and replaced by the following:
>
> a.   By the last day of each month you will report to us the total estimated completed value of all covered property for all locations in your inventory during the previous month. Inventory includes covered property you started as well as previously reported covered property. The covered property must be reported each month for coverage to continue...
>
> b.   If, at the time of loss you have not reported a covered property as required in this provision, we do not cover that covered property for that loss.
>
> c.   You must pay premiums based on the total estimated completed value of the covered property using the rate we furnish. Premium payment must accompany the report in order for the reported locations to be covered.

Exhibit B, Form HBIS-4, Rev. 10-96. Other builder's risk policies require calculation of a total policy premium at the beginning of the policy term, with payment of a premium for a full year even if a construction project is completed in less than a year. The Monthly Rate Endorsement allows a builder to avoid paying a premium for coverage he no longer needs. Each month, an insured reports all properties in its inventory, including both previously reported starts and new starts, and then calculates and pays its premiums each month based upon all of the properties in its inventory. Exhibits B, D. Thus, if a project is completed three months after obtaining the policy, a builder avoids paying the remaining nine months of premium he would have paid had he opted for the one-shot or annual rate reporting coverages. Significantly, if all projects are

completed during the course of the year, no report or premium whatsoever may be necessary for some months during the policy period until another project begins.

Of course, it is essential that an insured keep its end of the bargain with respect to reporting and premium payment, and the Monthly Rate Endorsement explicitly states that "if, at the time of loss you have not reported a covered property as required in this provision, we do not cover that property for that loss," and "…premium payment must accompany the report in order for the reported locations to be covered." Exhibit B, 2. b.-c. St. John's Construction, like the insured in Tapatio, seeks the advantages of the Monthly Rate Endorsement without the obligations that come with those advantages. Indeed, like the insured in Tapatio, St. John's Construction has sought to create confusion regarding the nature of its insurance coverage despite the fact that it fully understood those obligations prior to the fire. For example, Plaintiff has made much of the fact that although only "reporting form" and "Monthly Rate (HBIS-4)" are checked on the declarations page, HBIS-4 is not checked again under the section for "forms applicable to all coverage parts." Exhibit A. Putting aside for a moment that to have checked the second box would have been redundant, St. John's Construction cannot offer any reasonable alternative to the conclusion that the Monthly Rate Endorsement was the basis for calculating premiums in the present case; the only alternatives, the one-shot or annual rate reporting forms options, were clearly not checked on the declarations. Like the insured in Tapatio, St. John's is in danger of proving too much through such an argument. The Tapatio court noted:

> If the court were to conclude the contract is a non-reporting, one-shot policy [the insured's contention in that case], then most of the typed information appearing on the declaration page would be disregarded, something neither of the questioned endorsements expressly require. But, because the declaration page's one-shot section and the added one-shot form are blank, there is no method for

8

> determining the premium for a non-reporting policy. *Price is an essential element of an insurance contract. Therefore, to interpret this policy to be a non-reporting policy is not reasonable because to do so would be to conclude that there was no agreement on an essential price element and, thus, no contract--something the parties clearly did not intend.*

82 F. Supp.2d at 643 (emphasis added). Thus, if St. John's Construction contests applicability of the Monthly Rate Endorsement, it is left with simply no insurance contract at all, and therefore no coverage for the fire loss in question.

Another similarity with the Tapatio case is that like the insured in Tapatio, St. John's Construction cannot claim that any ambiguity in the declaration was the reason for its failure to pay its premium. Id. Beverly Skalski, the individual at St. John's Construction responsible for filing the reports and premium payments, conceded that she paid no attention to which boxes were checked on the Declarations, and could give no answer for why she failed to submit the reports or pay the premiums for several months prior to the fire. Exhibit E at 61-62, 75.

Finally, even if this Court were to conclude that an ambiguity existed in the policy, St. John's Construction would not benefit from an examination of the extrinsic evidence. The Tapatio court noted that the insured in that case had submitted monthly reporting forms with premiums for one and a half years before the fire, "…without protest or prompting." Id. at 643-644. Ms. Skalski had also done this in the present case for the first several months the policy was in effect, reporting all inventory, both existing starts and new starts, for the months ending November 1999 through March 2000. Exhibit F. Of course, she conceded during her deposition that she understood the difference between a one-shot policy, an annual rate reporting form policy, and a monthly rate reporting form policy. Exhibit E at 25, 29-31, 44-46. Ms. Skalski's conduct during the first several months the policy was in effect is entirely inconsistent with

either the one-shot or annual rate reporting form coverages, the only alternatives to the Monthly Rate Endorsement coverage, but consistent with at least attempting to report and pay premiums per the terms of the Monthly Rate Endorsement.

Based upon both the terms of the HBIS-4 Monthly Rate Endorsement, as well as its own conduct, St. John's Construction cannot escape the consequences of failing to report its properties and pay its premiums for several months prior to the fire. As in Tapatio, summary judgment is appropriate in Defendants' favor.

**C.      Having disregarded all representations made by Defendants, St. John's Construction cannot establish reliance upon purported material misrepresentations to support a negligent misrepresentation claim.**

In its Complaint, St. John's Construction asserts that it relied to its detriment upon negligent misrepresentations made by the Defendants regarding the terms of the policy. The fundamental flaw in this argument is that St. John's Construction paid no attention whatsoever to anything the Defendants said regarding Plaintiff's obligations under the policy, including both the original policy itself and any subsequent communications from the Defendants. Exhibit E at 19, 38-39, 47; Exhibit H, ZIS letter, 6/30/00, re: New Builder's Risk Plan Coverage Form and Rate Change (Skalski Deposition Exhibit 6). Thus, even assuming Plaintiff could establish the other elements of the tort of negligent misrepresentation, Plaintiff's claim fails as it cannot establish, by its own admission, any reliance upon any statement or assertion made by the Defendants in the present case. Twelve Knotts Limited Partnership v. Fireman's Fund Ins. Co., 87 Md. App. 88, 100-101, 589, A.2d 105 (1991) (discussing elements of tort of negligent misrepresentation). Summary judgment is appropriate as to Count IV of the Complaint.

**D.     Maryland has repeatedly refused to recognize the cause of action for bad faith asserted by the Plaintiff.**

Despite the fact that this case arises from Plaintiff's failure to pay its insurance premiums, Plaintiff nevertheless seeks to assert a breach of the implied duty of good faith and fair dealing as a basis for recovery against the Defendants in the present case. Maryland courts have repeatedly and explicitly rejected attempts to create a cause of action on that basis against insurers in this context, as most recently addressed by the Fourth Circuit in Hartz v. Liberty Mutual Ins. Co., 269 F.3d 474 (4th Cir. 2001) (relying upon well-settled Maryland law to affirm summary judgment as to insured's tort claims). See also, Stephens v. Liberty Mutual Fire Ins. Co., 821 F. Supp. 1119, 1122 (D. Md. 1993) (explicitly rejecting attempt to assert claim for breach of the implied duty of good faith and fair dealing). Summary judgment is therefore appropriate as to Plaintiff's claim for breach of the duty of good faith and fair dealing.

## IV. CONCLUSION

Plaintiff fully understood its obligation to both report and pay premiums on a monthly basis to maintain coverage for the property in question. Based upon the allegations of its Complaint, St. John's Construction now claims confusion regarding such obligations, despite the unambiguous terms of the policy and the fact that its own conduct belies such claims of confusion. Remarkably, under these circumstances Plaintiff goes still further and attempts to assert a claim for bad faith, which Maryland courts have repeatedly refused to recognize.

Summary judgment is appropriate as to all counts of Plaintiff's Complaint.

Respectfully submitted,

_____
GEORGE E. REEDE, JR.
Federal Bar No. 08220
NILES, BARTON & WILMER, LLP
111 South Calvert Street
Suite 1400
Baltimore, Maryland 21202
(410) 783-6432
(410) 783-6363 – facsimile
*Counsel for Defendants*
*Zurich American Insurance Company,*
*Assurance Company of America, and*
*Zurich Insurance Services, Inc.*