IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| ST. JOHN'S CONSTRUCTION CO. | * |
| Plaintiff, | * |
| v. | * Civil Case No.: WDQ-2-CV2338 |
| ZURICH AMERICAN INSURANCE COMPANY, ASSURANCE COMPANY OF AMERICA, and ZURICH INSURANCE SERVICES, INC. | * * * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT[1]

Remarkably, having conceded its failure to pay its insurance premiums, St. John's Construction nevertheless asserts entitlement to coverage. New found confusion regarding the obligation to pay for insurance coverage is the premise for this assertion; confusion that did not exist prior to the loss, but which Plaintiff now seeks to create based upon a selective reading of various policy forms. In reality, whether this Court applies the terms of the Monthly Rate Endorsement (HBIS-4) or the forms the Plaintiff relies upon, in either case Plaintiff has still failed to pay the necessary premium, and its breach of contract claim fails accordingly. The claim for negligent misrepresentation suffers from a related analytical flaw. Finally, Maryland Courts have repeatedly rejected the arguments Plaintiff advances in support of its groundless cause of action for bad faith. Based upon the undisputed facts, and as a matter of law, summary judgment in the Defendants' favor is appropriate.

---

[1] Per Local Rule 105.2.c, this will also serve as Defendants' Opposition to Plaintiff's Cross-

A. **Plaintiff has failed to demonstrate a genuine issue of material fact regarding receipt and application of the Monthly Rate Endorsement.**

In an attempt to avoid application of the Monthly Rate Endorsement, Plaintiff repeatedly asserts that it never received the endorsement. The problem with this assertion is that Beverly Skalski, the only St. John's Construction employee with personal knowledge on this issue, testified that she *did not know* if they had received the endorsement:

> Q. Just for clarity, I'm going to mark as the next exhibit, Exhibit No. 16, the October, 1996 version of the HBIS-4 Form.
>
> (Exhibit No. 16 was marked for identification and was retained by counsel. [Defendants' Exhibit B])
>
> BY MR. REEDE:
>
> Q. Okay. I've shown you Exhibit 16. Do you recall ever seeing that particular form prior to the fire?
>
> A. Prior to the fire? No.
>
> Q. In light of the fact you did not read all of the policies when they came in, how can you be certain you never received that form before the fire?
>
> A. I didn't say I didn't receive it. You asked me if I read it.
>
> Q. Yes.
>
> A. I said no.
>
> Q. I'm trying to be more careful here. Could you read back my last question.
>
> (The Reporter read the pending question.)
>
> A. I guess I can't be then.

---

Motion for Summary Judgment.

Defendants' Exhibit E, Skalski Deposition at 79-80. Not knowing whether the form was received is something quite different from an emphatic denial that St. John's Construction ever received the form. Plaintiff would not have the option of attempting such evasion had is fulfilled its duty to actually read its insurance policy forms. Benner v. Nationwide Mutual Ins. Co., 93 F.3d 1228, 1238 (4th Cir. 1996)(insured has duty to read notices sent by insurer, and insurer is not responsible for an insured's failure to do so). In contrast, while Plaintiff is uncertain as to whether it received the Monthly Rate Endorsement, Defendants are quite certain Plaintiff did; Sue Guinn, who worked for Plaintiff's insurance agent at the time, has testified that she did in fact provide all of the insurance forms to St. John's Construction. Defendants' Exhibit I, Susan Guinn Deposition at 18-19.[2] Faced with Ms. Guinn's unequivocal testimony that she provided the forms, including the Monthly Rate Endorsement, Ms. Skalski's testimony that she does not know if this is true simply does not create a genuine issue sufficient to allow Plaintiff to escape application of the Monthly Rate Endorsement. Cf. Benner, 93 F.3d at 1234-35 (insured's claim that he did not receive, or did not remember receiving, policy endorsement was insufficient to overcome presumption of delivery); Celotex Corp. v. Catrutt, 477 U.S. 317, 324-25 (1986)(plaintiff must demonstrate genuine issue of material fact to avoid summary judgment against it). Application of the Monthly Rate Endorsement in the present case is therefore appropriate as a matter of law.

**B.   Under the terms of the Monthly Rate Endorsement, Plaintiff's admitted failure to submit several monthly reporting forms and premium payments prior to the loss resulted in a lapse of coverage.**

---

[2] Defendants' exhibits for its Motion for Summary Judgment were lettered A-H, and Defendants exhibit for purposes of this Reply continue consecutively with Exhibit I.

Unfortunately, Plaintiff is guilty of selectively referencing language of the relevant forms to create a misleading impression of ambiguity. This is particularly true in the case of Plaintiff's references to the 1996 addition of the Monthly Rate Endorsement. Plaintiff quotes only Section (b) regarding the reporting obligation and, juxtaposing that language with the 2000 edition, seeks to create the false impression that only the 2000 edition requires that all premium payments and reports be submitted prior to a loss for coverage to remain in effect.[3]

A review of the policy as a whole, and of the HBIS-4 Endorsement in particular, leads to a decidedly different conclusion.[4] Under Section (a), the Endorsement provides that "the covered property must be reported each month for coverage to continue," and under Section (c), notes that "premium payment must accompany the report in order for the reported locations to be covered." Defendants' Exhibit B, Form HBIS-4, Rev. 10-96. Thus, when viewed as a whole, the 1996 and 2000 editions of the HBIS-4 require the same thing; reports and premium payments must be submitted every month a property is in inventory prior for coverage to exist at the time of loss. Ms. Skalski, the St. John's Construction employee responsible for making these reports and premium payments, fully understood this obligation. Defendants' Exhibit E, Skalski Deposition at 44-46. Furthermore, the fact that careful reading and analysis of the form may be necessary does not render a policy ambiguous, as demonstrated by the Tapatio Court's ruling that the 1996 edition of the HBIS-4 Endorsement is unambiguous. Benner, 93 F.3d at 1238; Tapatio Spring's Builders, Inc. v. Maryland Casualty Ins. Co., 82 F. Supp.2d 633, 642 (W.D. Tex. 1999). This Court should not allow the Plaintiff to create ambiguity were none exists by omitting policy language it finds inconvenient.

---

[3] Plaintiff's Opposition Memorandum at 6-7, 24-25.
[4] Defendants' Memorandum at 2, paragraph 2.

Plaintiff has used a similar interpretive approach in its review of other related forms and publications:

1. **Builder's Risk Plan Monthly Rate Reporting Form**

    - St. John's Construction repeatedly references this form as the "Reporting Form", finding the full caption, "*Monthly Rate* Reporting Form" unhelpful to its argument. Defendants' Exhibit D. This caption is consistent with both the box checked on the policy Declarations, ("Monthly Rate (HBIS-4))," and the HBIS-4 itself, which is captioned as "Monthly Rate Endorsement." Defendants' Exhibits A, B. St. John's Construction concedes that it received these Monthly Rate Reporting Forms each month, and was therefore reminded each month that it needed to calculate its premium for all properties in inventory (both previously reported starts and new starts) and then pay the premiums it calculated every month to maintain insurance coverage.

    - St. John's Construction interprets the word "start" to apply only to new starts when discussing the introductory language of the Monthly Rate Reporting Form.[5] However, the Monthly Rate Reporting Form itself refers to both *previously reported* starts and *new* starts, i.e., all properties in inventory are referenced as starts. Defendants' Exhibit D. Thus, to the extent Plaintiff seeks to create the impression that a property need only be

---

[5] Plaintiff's Opposition Memorandum at 25. Note that Plaintiff uses the same tact in discussing the Builders Risk Reporting Form Guidelines and *Job Site News*. Id. at 10-11.

reported if it is a new start, Plaintiff ignores the clear meaning of the term as used in the Monthly Rate Reporting Form itself.

- Plaintiff's most remarkable contention is that it need only report a property once on a Monthly Rate Reporting Form, and pay the monthly premium only once, to have the benefit of coverage.[6] To do this, Plaintiff focuses on the following language of the Monthly Rate Reporting Form:

    > Any structures started but not reported within the time stated in the policy are not covered. All structures and inventory for the month ending _____ must be reported and payment received in the lockbox by _____ in order for coverage to be in effect.[7]

What Plaintiff ignores is that the Monthly Rate Reporting Forms for April, May, June and July 2000, all of which Plaintiff had failed to submit at the time of the fire, all said the same thing; *those reports and payments had to be received for coverage to be in effect as well.* Thus, all structures in inventory for the months ending April – July 2000 had to be reported and payment received in the lockbox by the end of May -- August, respectively, for coverage to be in effect. Yet St. John's Construction failed to submit these reports and payments until December 22, 2001; *two months after the fire.* Defendants' Exhibit G. St. John's Construction has conceded that it failed to submit these reports and premium payments, and

---

[6] Id. Note that this is inconsistent with Plaintiff's own reporting practices. During the first several months the policy was in effect, Beverly Skalski submitted reports listing the same properties on multiple reports under "Previously Reported Starts", and did so even when there were no new starts to report. Defendants' Exhibit F. Ms. Skalski understood that she needed to calculate and pay premiums for all properties in inventory each month to maintain coverage.
[7] Id.

6

therefore by its own admission, even applying the terms of what it claims constitutes the policy,[8] coverage did not exist at the time of the loss.

2.   **Builder's Risk Plan Monthly Rate Late Reports.**

Plaintiff concedes that the policy in question was a continuous reporting policy. It also concedes that it received the Monthly Rate Reporting Forms, but submitted a number of them late, and more importantly, failed to submit several of them at all until after the fire. However, Plaintiff then misinterprets the significance of late reporting, and the very real difference between late reporting and no reporting at all.

Under the Monthly Rate Reporting Form coverage, if an insured has starts in inventory but reports those starts late, coverage lapses until all outstanding reports and premium payments are received by Assurance Company. However, because the insured can bring its coverage current at any time by filing those outstanding reports and payments, only the *possibility* of a gap in coverage exists, and that possibility is entirely within the insured's control. Of course, the simple and generally understood concept that one must pay for insurance coverage to have such coverage underlies all of this, and again, Beverly Skalski has conceded that she grasped that concept herself. In any event, based upon the nature of the Monthly Rate Reporting Form program, and the very

---

[8] Plaintiff's version of what constitutes the policy is assembled as Plaintiff's Exhibit 4, and also includes the Monthly Rate Reporting Forms. Plaintiff's Opposition Memorandum at 4-5. Although it claims to have only received the Declarations, Plaintiff has included other forms as part of the policy as well, apparently conceding that because those forms are checked on the Declarations they form a part of the policy regardless. To be consistent, Plaintiff should also include the HBIS-4 Endorsement since the box for "Monthly Rate (HBIS-4)" was checked on the Declarations as well. To do otherwise renders the reference to "HBIS-4" meaningless, but Plaintiff insists that it needed to be checked a second time to be applicable. See Defendants' Memorandum in Support of Summary Judgment at 1-2, ¶1; 8.

language Plaintiff opts to highlight in its memorandum,[9] describing the danger of late reporting as creating a "possible gap", or as potentially being "in jeopardy," is entirely accurate.

Plaintiff also claims entitlement to notification that it had failed to file reports from May through August of 2000 with the necessary premium payments.[10] Again, St. John's Construction is guilty of ignoring the very form it relies upon for coverage; under NEW STARTS, the Monthly Rate Reporting Form states that "if you have NO structures in your inventory (new starts OR previously reported) to report, *do not return this reporting form*." Defendants Exhibit D, Builder's Risk Plan Monthly Rate Reporting Form (emphasis in italics added). The Monthly Rate Reporting Form requires reports and payments only if an insured still has properties in inventory, and the form itself explicitly states that no form should be submitted if there are no such properties. Thus, months without reports were to be expected, and were not unusual occurrences warranting notification.

The reason for this is obvious; if there are no properties in the insured's inventory, there is no premium to pay. The advantage to the Monthly Rate Endorsement coverage is that the insured avoids paying premium for properties it may not have in inventory during the course of a full year, but with other types of builders risk coverage, payment would be necessary for the full year. Thus, Plaintiff's contention that its failure to file reports warranted notification from the Defendants is contrary to the purpose of the monthly rate coverage and the express terms of the Monthly Rate Reporting Form. As discussed in

---

[9] Id.
[10] Plaintiff's Opposition Memorandum at 9.

greater detail below, Plaintiff's contention that a cancellation notice should have been provided in the present case suffers from the same analytical flaw.

3.   **Builder's Risk Reporting Form Guidelines.**

The Guidelines selectively quoted by Plaintiff in its opposition memorandum are among the various forms and publications St. John's Construction received prior to the loss, but chose to ignore. Continuing its misinterpretation of the word "start", Plaintiff quotes the following language from the Guidelines:

> For example, the Builder's Risk Reporting Form Guidelines provide, under <u>Reporting On Time</u>, "if there are no starts to report, returning this form [Reporting Form] is not necessary." Exhibit 17. That same publication provides, as to <u>Monthly Rate</u> "the coverage limit is two years."[11]

Taking this language out of context, Plaintiff seeks to create the impression that a report is only required if there are *new* starts to report (ignoring the obligation to pay a premium on a monthly basis), and that having reported a property once, coverage will then continue for two years.

As explained above, the Monthly Rate Reporting Form itself explicitly states that reports for both previously reported starts and new starts, as well payment of the calculated premium for those properties, is essential each month for coverage to continue. In addition, during the policy term of two years, the Monthly Rate Reporting Form anticipates that some months may pass without a report or payment because the insured may have no properties in inventory during those months. Reviewing the Guidelines as a whole, rather than in the piecemeal fashion used by the Plaintiff, makes this quite clear.

---

[11] Plaintiff's Opposition Memorandum at 10.

9

For example, under "<u>Reporting on Time</u>", Plaintiff opted not to reference the following language:

> If the reporting form and the premium payment are delinquent, coverage does not begin until the date that the form and payment are received by the Builder's Risk Plan.

Plaintiff's Exhibit 17.

**4.    Agent Manual.**

In referencing the Agent Manual, Plaintiff is straying into irrelevant territory since St. John's Construction would never be privy to the Manual as an insured, and it is the policy rather than any such manual that governs the relationship between Assurance Company and St. John's Construction. Plaintiff's Exhibit 20. Plaintiff does not cite the language it finds confusing in the manual, but as discussed above, a cursory review of the Monthly Rate Reporting Form Plaintiff relies upon should have cleared up any confusion regarding the implications of its failure to report and pay premiums for several months prior to the fire.

**5.    Job Site News.**

Unfortunately, this is a publication St. John's Construction admits receiving prior to the fire, but chose to file and ignore. Defendants' Exhibit E, Skalski Deposition at 36. Again, the policy governs the result here, but a review of this brief publication *in its entirety* would have proven quite helpful to the Plaintiff. For example, the article explains the difference between annual rate and monthly rate coverage, including when properties must be reported:

> Also, your entire inventory must be reported when submitting a monthly report, whereas with the annual

10

report, only new starts and renewals are reported.

Plaintiff's Exhibit 21 at 3. Plaintiff does quote the following language, but misses its significance:

> Be careful. Late payments can cause problems with coverage.
> It can leave you without coverage for that reporting period,
> making you responsible for any losses in that time.

Id. Plaintiff's failure to exercise such care and to pay for its insurance coverage is why Plaintiff is indeed responsible for its own loss in the present case.

**C. As the monthly rate reporting policy was never cancelled, neither a cancellation notice nor a return of premiums was appropriate in the present case.**

Plaintiff's erroneous contention that the policy was "essentially cancelled," and that premium payments made after the loss should have been returned, is premised upon Plaintiff's flawed interpretation of the policy already discussed at length. To briefly summarize, by failing to pay premiums for several months the Plaintiff allowed its coverage to lapse, and coverage was not in effect at the time of the fire. During the lapse period, having received no reports or premium payments, Defendants could reasonably assume that St. John's Construction had followed the instructions of the Monthly Rate Reporting Form and not submitted reports because there were no properties in inventory to report. However, it was within St. John's Construction's power to reactivate coverage at any time, and it did so on December 22, 2000, when it finally submitted the outstanding reports and premium payments. Defendants' Exhibit G. As of that date, going forward, St. John's Construction once again had coverage under the policy as long as

it continued to comply with its monthly reporting and premium payment obligations. Thus, at no time was the policy ever cancelled, and Defendants had no reason to send a cancellation notice.[12]

Similarly, with respect to premium payments after the loss, there was no reason to return premium payments made to reactivate coverage for a policy that remained in effect. Unlike the annual rate coverage, under the monthly rate reporting coverage an insured has the benefit of holding on to premiums payments that may prove unnecessary if properties in inventory are completed before the end of the policy year. However, as premium payments are made each month they are treated as fully earned, and an insured is never entitled to a refund even when coverage actually does end. Defendants' Exhibit B, Monthly Rate Endorsement. In the present case, having chosen to reactivate its builders risk coverage effective December 22, 2000 by finally paying its outstanding premiums, St. John's Construction cannot now expect a return of those premium payments.

**D.    As Defendants had no obligation to notify Plaintiff of its own failure to report and pay premiums, Defendants' silence cannot be construed as a negligent misrepresentation.**

Plaintiff does not contest the fact that it failed to read virtually every form and publication Defendants provided regarding builder's risk coverage.[13] Instead, premised upon Defendants' purported obligation to provide "no report notification," or a cancellation notice, St.

---

[12] Plaintiff attempts to rely upon testimony to the contrary from its agent, Chris Seebach, as well as the purported experience of other agents Mr. Seebach has spoken with in the past. Plaintiff's Opposition Memorandum at 8-9. This is both hearsay and inappropriate opinion testimony, and significantly, Mr. Seebach conceded having no personal knowledge regarding the policy at issue. Defendants' Exhibit J at 110-115. Thus, Mr. Seebach's testimony regarding his general experience is not grounded in the terms of the policy at issue, which governs resolution of the breach of contract dispute before this Court.

[13]  See Defendants' Memorandum in Support of Summary Judgment at 10.

John's Construction now claims it was somehow lulled into believing its coverage remained in effect absent these notifications.

The problem of course is that, as discussed above, providing such notification would have been inconsistent with the terms of even Plaintiff's version of the policy. First, since period of time without monthly reports were to be expected, notification that no report was filed was unnecessary. *Supra,* at 7-8. Second, the policy was never cancelled, making cancellation notification illogical. *Supra,* at 11-12. Once again, Plaintiff's failure to read its policy forms is the real culprit here. A review of the Monthly Rate Reporting Form alone would have dispelled the notion that Plaintiff would ever receive the notifications it claims to have been dependent upon in the present case. Benner, 93 F.3d at 1238. Thus, Plaintiff's claim for negligent misrepresentation fails not only because it cannot establish the essential elements, but because of its own contributory negligence as well. Twelve Knotts Limited Partnership v. Firemen's Fund Ins. Co., 87 Md. App. 88, 105, 589 A.2d 105 (1991)(insured's failure to read policy "crippled" its claim, and constituted contributory negligence as a matter of law).

**E.     This Court should decline Plaintiff's invitation to ignore Maryland precedent rejecting Plaintiff's cause of action for bad faith.**

St. John's Construction begins the defense of its cause of action for bad faith with the concession that Maryland law is not "supportive" of its claim. This is no small understatement. Maryland courts have repeatedly and unequivocally rejected the very arguments Plaintiff advances before this Court. Plaintiff nevertheless boldly invites this Court to ignore that precedent, including the Fourth Circuit's recent decision in Hartz v. Liberty Mutual Ins. Co., 269 F.3d 474 (4th Cir. 2001). This Court should decline the invitation. Maryland Courts have wisely concluded that recognition of such a cause of action in this jurisdiction is a decision for

Maryland's General Assembly, not its courts. <u>Stephens v. Liberty Mutual Fire Ins. Co.</u>, 821 F. Supp. 1119, 1123 (D. Md. 1993)("…if Maryland wishes to allow the recovery of exemplary damages, resort must be made to a legislative branch not unfamiliar with the insurance industry"). Plaintiff's cause of action premised upon the implied duty of good faith and fair dealing should be rejected as a matter of law.

**F.      Conclusion.**

Chief Judge Hammond's comment bears repeating: "one usually gets in this life only what he pays for. Insurance coverage is no exception." <u>Old Colony Ins. Co. v. Moskios</u>, 209 Md. 162, 177, 120 A.2d 678 (1956). Despite Plaintiff's efforts, it cannot escape that simple adage in the present case. Whether this Court applies the terms of the Monthly Rate Endorsement, or the terms of the policy the Plaintiff has created, in either case Plaintiff has simply failed to pay for the insurance coverage it seeks for its loss. This is largely due to Plaintiff's failure to read either version of the policy, including its own, and comply with the reporting and premium payment obligations outlined in the policy forms. Plaintiff cannot now escape the consequences of its failure to do so by imposing notification obligations inconsistent with those same policy forms. In addition, based upon overwhelming precedent, and particularly based upon the facts of this case, Plaintiff's assertion of a cause of action for bad faith is groundless. Summary Judgment in Defendants' favor is therefore appropriate.

               Respectfully submitted,

               _____
               GEORGE E. REEDE, JR.
               Federal Bar No. 08220
               NILES, BARTON & WILMER, LLP
               111 South Calvert Street

Suite 1400
Baltimore, Maryland 21202
(410) 783-6432
(410) 783-6363 – facsimile
*Counsel for Defendants*
*Zurich American Insurance Company,*
*Assurance Company of America, and*
*Zurich Insurance Services, Inc.*